OPINION
This is an appeal from a decision of the Holmes County Court of Common Pleas regarding custody.
The Assignments of Error before this court are:
 I. THE TRIAL COURT ERRED IN GRANTING CUSTODY OF THE CHILD TO THE FATHER IN APPARENT PREFERENCE TO HIS FINANCIAL STATUS OR CONDITION AS PROHIBITED BY ORC 3109.04(F)(3).
 II. THE TRIAL COURT ERRED IN GRANTING CUSTODY OF THE CHILD TO THE FATHER BY CONSIDERING FACTORS NOT ENUMERATED IN ORC 3109.04(F)(1) AND WHICH WERE NOT RELEVANT AS REQUIRED THEREIN.
 III. THE TRIAL COURT ERRED AND/OR ABUSED ITS DISCRETION IN CONSIDERING ECONOMIC FACTORS, CHARACTER, AND FAMILY RELATIONS OF THE MOTHER WHEN IT FAILED TO CAUSE AN INVESTIGATION OF THE SAME UNDER ORC 3109.04(C).
 IV. THE MOTHER'S VISITATION SCHEDULE AS SET BY THE COURT IS TOTALLY UNWORKABLE AND AS SUCH IS UNREASONABLE AND A DENIAL OF VISITATION ALTOGETHER.
 STATEMENT OF FACTS
Historically, Alena Malcuit was born June 24, 1996, and has lived with her mother from birth except during periods when appellant was without an adequate residence. The actual consistent period has been for somewhat over two years preceding the hearing in this cause.
The child bears the last name Malcuit as this was the name of appellant's ex-husband. Alena was conceived during such marriage but while she and Mr. Malcuit were separated. (T. at 19).
The child lived for some time with him when appellant lacked an appropriate residence.
Mr. Malcuit has custody of two other children of appellant, ages 3 and 6. (T. at 17).
The paternity of such child was determined to be appellee on May 4, 2000 after a scientific report of April 13, 2000.
After paternity determination, visitations occurred on an amicable basis.
Thereafter, on July 12, 2000, the Child Enforcement Agency of Holmes County filed a complaint for support payments. An answer and counterclaim were filed by appellee to become the residential parent and legal custodian and/or for liberal visitation under R.C. § 3111.13(C).
The case proceeded to hearing on such counterclaim as the filing Agency dismissed its complaint.
Appellee is a Georgia resident but his mother and appellant have maintained close ties regarding Alena since the time appellant became pregnant.
Appellee resides with a girlfriend in a double-wide trailer he is in the process of purchasing.
Appellant has resided, since Alena's birth, with one Alvin Ramsey and at present with Albert Lattimer and his parents, at their home.
 I., II., III.
We shall consider each of the Assignments of Error under abuse of discretion and manifest weight standards but will review the first three Assignments simultaneously as each involves R.C. § 3109.04, particularly subdivisions (C) and (F).
The standard of review is abuse of discretion. In order to find an abuse of discretion, we must determine that the trial court's decision was unreasonable, arbitrary or unconscionable and not merely an error of law or judgment. Blakemore v. Blakemore (1983), 5 Ohio St.3d 217. We must look at the totality of the circumstances in the case sub judice and determine whether the trial court acted unreasonably, arbitrarily or unconscionably.
We are not fact finders; we neither weigh the evidence nor judge the credibility of witnesses. Our role is to determine whether there is relevant, competent and credible evidence upon which the fact finder could base its judgment. Cross Truck v. Jeffries (Feb. 10, 1982), Stark App. No. CA-5758, unreported. Accordingly, judgments supported by some competent, credible evidence going to all the essential elements of the case will not be reversed as being against the manifest weight of the evidence. C.E. Morris Co. v. Foley Constr. (1978), 54 Ohio St.2d 279.
Prior to a complete review of the Assignments, we will first address certain conclusions contained therein. The Second Assignment objects to the trial court considering factors not enumerated in R.C. §3109.04(F)(1).
Such statute specifically provides that "the Court shall consider all relevant factors, including, but not limited to" those factors set forth.
As to the lack of an investigation, referred to in Assignment Three, R.C. § 3109.04(C) states:
 (C) Prior to trial, the court may cause an investigation to be made as to the character, family relations, past conduct, earning ability, and financial worth of each parent. . .
The trial court, therefore, was not required to order an investigation but was within its discretion in either ordering or not ordering such.
The factors under R.C. § 3109.04(F) are:
 (F)(1) In determining the best interest of a child pursuant to this section, whether on an original decree allocating parental rights and responsibilities for the care of children or a modification of a decree allocating those rights and responsibilities, the court shall consider all relevant factors, including, but not limited to:
 (a) The wishes of the child's parents regarding the child's care;
 (b) If the court has interviewed the child in chambers pursuant to division (B) of this section regarding the child's wishes and concerns as to the allocation of parental rights and responsibilities concerning the child, the wishes and concerns of the child, as expressed to the court;
 (c) The child's interaction and interrelationship with the child's parents, siblings, and any other person who may significantly affect the child's best interest;
 (d) The child's adjustment to the child's home, school, and community;
 (e) The mental and physical health of all persons involved in the situation;
 (f) The parent more likely to honor and facilitate court-approved parenting time rights or visitation and companionship rights;
 (g) Whether either parent has failed to make all child support payments, including all arrearages, that are required of that parent pursuant to a child support order under which that parent is an obligor;
 (h) Whether either parent previously has been convicted of or pleaded guilty to any criminal offense involving any act that resulted in a child being an abused child or a neglected child; whether either parent, in a case in which a child has been adjudicated an abused child or a neglected child, previously has been determined to be the perpetrator of the abusive or neglectful act that is the basis of an adjudication; whether either parent previously has been convicted of or pleaded guilty to a violation of section 2919.25 of the Revised Code involving a victim who at the time of the commission of the offense was a member of the family or household that is the subject of the current proceeding; whether either parent previously has been convicted of or pleaded guilty to any offense involving a victim who at the time of the commission of the offense was a member of the family or household that is the subject of the current proceeding and caused physical harm to the victim in the commission of the offense; and whether there is reason to believe that either parent has acted in a manner resulting in a child being an abused child or a neglected child;
 (i) Whether the residential parent or one of the parents subject to a shared parenting decree has continuously and willfully denied the other parent's right to parenting time in accordance with an order of the court;
 (j) Whether either parent has established a residence, or is planning to establish a residence, outside this state.
 (2) In determining whether shared parenting is in the best interest of the children, the court shall consider all relevant factors, including, but not limited to, the factors enumerated in division (F)(1) of this section, the factors enumerated in section 3119.23 of the Revised Code, and all of the following factors:
 (a) The ability of the parents to cooperate and make decisions jointly, with respect to the children;
 (b) The ability of each parent to encourage the sharing of love, affection, and contact between the child and the other parent;
 (c) Any history of, or potential for, child abuse, spouse abuse, other domestic violence, or parental kidnaping by either parent;
 (d) The geographic proximity of the parents to each other, as the proximity relates to the practical considerations of shared parenting;
 (e) The recommendation of the guardian ad litem of the child, if the child has a guardian ad litem.
 (3) When allocating parental rights and responsibilities for the care of children, the court shall not give preference to a parent because of that parent's financial status or condition.
Examining the trial court's Judgment, in light of such statutorily expressed requirements, we find :
 The primary issue for the Court's determination is the best interest of Alena, as stated in Ohio Revised Code (hereinafter ORC) Section 3109.04(F)(1). That same statute indicates that in determining her best interest, the Court must consider all relevant factors, including, but not limited to, the factors spelled out in subsections (a)-(j).
 Subsection (a) concerns the wishes of the child's parents. It is obvious in this case that each parent desires to be named the residential parent and legal custodian of Alena.
 Subsection (b) has to do with the wishes of the child, if the Court interviews the child in chambers pursuant to ORC Section 3109.04(B). As indicated above, the Court finds that Alena does not have sufficient reasoning ability to express her wishes and concern with respect to the allocation of parental rights and responsibilities.
 The child's "interaction and interrelationship with his parents, siblings, and any other person who may significantly affect the child's best interest" is the focus of subsection (c). The Court heard testimony regarding Alena's relationship with her father, mother, and Esther Schertz.
 Mr. Schertz testified that his visits with his daughter have been getting increasingly better since he first became involved in her life. Mr. Schertz's girlfriend, Brandi Snider, stated that he and his daughter got along very well during Alena's visit to Atlanta in December 2000, saying that Alena, "didn't want to go home." Ms. Zeigler admitted that she had no concerns about Alena having contact with Mr. Schertz.
 Ms. Zeigler also testified about her relationship with her daughter. She stated she has a "perfect mother-daughter relationship" with Alena. Mrs. Esther Schertz, the mother of Mr. Schertz, testified about her relationship with her granddaughter. She said she first saw Alena, shortly after Alena, was born, but at that time she was not told that her son was Alena's father. Alena began staying overnight with her in June 2000, and Mrs. Schertz said that she is "very close with Alena now." Additionally, Ms. Zeigler testified that Mrs. Schertz has been in constant contact with her since Ms. Zeigler was pregnant with Alena, and that she often allows Alena to stay with her paternal grandmother. Based upon her comments and demeanor as she was talking about her granddaughter, it seems that a very close relationship exists between Alena and her grandmother.
 Subsection (d) of ORC Section 3109.04(F)(1) instructs the Court to consider the "child's adjustment to his home, school, and community. . ." The Court heard Ms. Zeigler testify regarding her current living arrangements with her boyfriend and his parents. The Court also heard testimony from her indicating she has lived in at least six (6) or seven (7) different residences during Alena's young life, and that she was homeless for approximately one (1) month in 1998. Both she and her boyfriend testified that they hoped to find their own place soon, so Alena is looking at one more move in the near future as well. Because of these very frequent moves, the Court is of the opinion that even if Alena might be adjusted to her current home, there is very little likelihood she is in any manner "attached" to that home.
 Ms. Zeigler testified about Alena's attendance at the Head Start program in Glenmont. The Court was not informed regarding Alena's attitude about attending Head Start, nor was there any testimony presented about Alena's adjustment to her community.
 Subsection (e) inquires as to the "mental and physical health of all persons involved in the situation. . ." The Court has not been presented with any information to indicate there exist any mental and/or physical health problems affecting the various parties.
 "The parent more likely to honor and facilitate visitation and companionship rights approved by the court" is the factor in subsection (f). The Court has considered carefully any testimony that shed light on the attitudes of the mother and father regarding visitation involving this child and any other children they may have, as well as their actions regarding that same issue.
 Mr. Schertz has a short history to trace in this matter to try to ascertain his attitude toward visitation. The testimony showed that several months after paternity was established, he began visiting his daughter. The only indication in the testimony that Mr. Schertz may have caused a problem during visitation concerned the New Years Eve 2000 incident when Alena was not returned to her mother as planned. However, the Court is unclear whether this was the fault of Mr. Schertz or his mother who testified she "changed plans regarding picking up Alena without notifying Lova."
 Conversely, the Court is troubled by the attitude of Ms. Zeigler toward visitation with this child and her visitations with her two other children (both in the custody of her ex-husband Vaughn Thomas Malcuit). Ms. Zeigler admitted in her testimony to only one incident, in March or April 2000, when she failed to pick up Alena when she was scheduled to do so. She said she was staying at a trailer in Lakeville and "was two days late because I couldn't get my car fixed."
 However, the testimony of Esther Schertz leads the Court to suspect that Ms. Zeigler omitted several such incidents. Mrs. Schertz talked about the weekend of July 4, when Ms. Ziegler failed to meet them at the Buehler's parking lot as agreed. Ms. Ziegler claimed she was there as planned; whether that is true or not, she did not pick up Alena until approximately 10:00 A.M. the next day. Mrs. Schertz also testified regarding Thanksgiving weekend of 2000, when her son had visitation with Alena. Ms. Zeigler delivered Alena at 4:00 P.M. on Thanksgiving Day, and agreed to pick her up at 6:00 P.M. on Friday. Mrs. Schertz claimed Ms. Zeigler never showed up on Friday, and that she had to return Alena home on the following Monday afternoon. Mrs. Schertz said her home had a telephone during both of these incidents. The Court is troubled by the cavalier attitude exhibited by Ms. Zeigler. It appears as if she was not terribly concerned about picking up her daughter when scheduled, and neither was she concerned enough to call Mrs. Schertz regarding her failure to do so.
 The Court is also troubled by Defendant's Exhibit 1, the signed statement of Ms. Zeigler giving Joyce Vess permission to "have Alena Malcuit until further notice," and also to" have treated if needed." The Court recognizes that occasionally a parent will need to have friends or family watch a child, sometimes for an extended period. The Court also appreciates that Ms. Zeigler attempted to give Joyce Vess the ability to sign for medical treatment of Alena if necessary. However, the Court is troubled by the open-ended nature of the document. Ms. Zeigler testified that Alena was left with Joyce Vess for only "3-4 days, 5 at most," but Esther Schertz stated it was more on the order of two to three weeks.
 Vaughn Thomas Malcuit testified regarding the visitation pattern of Ms. Zeigler with her two children, of which he has custody. He stated that she exercised her visitation rights regularly for part of 1999, but then her visitations became erratic, and finally stopped. He went on to claim that she visited with her two children around Christmas 2000, but that was her only visit with them during 2000. Ms. Zeigler. however, claimed Mr. Malcuit was lying about the amount of times she visited with her children.
 The factor in subsection (g) examines whether either parent is delinquent on child support payments that parent is ordered to pay. Ms. Zeigler testified that she was "currently $300-$400 behind," and that she was facing a contempt hearing in February 2001 for her failure to pay child support. Her ex-husband, Vaughn Thomas Malcuit, testified that her last payment of child support was in June 2000 in the amount of $60.00. He further stated that her arrearages owed to him exceed $4,000.00.
 Subsection (h) concerns whether either parent has ever been convicted of acts resulting in a child being adjudicated abused or neglected, or whether either parent has committed any of various other acts involving children as victims. There was no testimony presented to the Court regarding this factor.
 Whether either parent has denied the other parent visitation as outlined in a shared parenting agreement is the focus of subsection (i). This factor is not relevant to this case as there has not been a shared parenting arrangement between these parents.
 The final listed factor, subsection (j), concerns whether either parent has established, or is planning to establish, a residence outside the State of Ohio. During the entire pendency of this case, Mr. Schertz has resided in Georgia. There was conflicting testimony given regarding his reasons for relocating to Georgia shortly after the birth of Alena. However, after paternity was established in April 2000, Mr. Schertz has been able to make the trip to Holmes County to visit with Alena several times, and he also paid airfare for her to make the trip to Georgia in December 2000. Therefore, the Court is not inclined to view the fact that Mr. Schertz resides out of the State of Ohio as a significant factor.
It is clear that the trial court carefully considered each of such factors from the testimony presented. While appellant is correct that R.C. § 3109.04(F)(3) prohibits a preference based upon financial status or condition, the record and Entry of Judgment fails to indicate that such occurred. The trial court reviewed the history as to support of such child but did not indicate a preference in this regard, only considering such in light of the efforts of appellant and her patterns of behavior.
Considering all of the above, we reject the First, Second and Third Assignments of Error.
 IV.
The Fourth Assignment of Error again raises the abuse of discretion standard but with little or no basis given.
We agree that the weekend visits present difficult or perhaps unworkable visitation by appellant even though one-half of gas and lodging would be reimbursable by appellee. However, the trial court was faced with the dilemma of an out of State father whose custody the trial court determined was in the best interests of the child.
Further, the trial court gave guidance to appellant as to a change in lifestyle. If such guidance produced results, the weekend visitations are not impossible, even though difficult.
Summer extended visitation is, of course, provided.
We find that the trial court, under a difficult scenario, in attempting to provide a stable existence for the child, did not abuse its discretion.
Therefore, we reject the Fourth Assignment of Error and affirm the trial courts decision.
JUDGMENT ENTRY
For the reasons stated in our Memorandum-Opinion, the judgment of the Common Pleas Court of Holmes County, Ohio, is affirmed. Costs to appellant.
Hon. W. Scott Gwin, J. Hon. John F. Boggins, J. concur. Hon. Julie A. Edwards, P.J. concurs separately.